Good morning. May it please the court, my name is Kari Hong, and I represent petitioner Jean-Baptiste Ridore. The BIA committed two notable errors when it reversed the immigration judge or IJ's grant of CAT and when it reversed the IJ's grant of cancellation. Turning first to the CAT claim, the BIA came to a different conclusion because it determined that the detention policy was a lawful sanction. It determined that the conditions created in the Haitian detention centers were not deliberate, but the result of a budgetary constraint. It determined that the Haitians hiring of prison guards who were ineligible for police service was not an attempt to harm prisoners. And it determined that Ridore, Mr. Ridore, would not be tortured. These are findings of facts. Why? Because if they look at the evidence and they determine factual questions about whether what the conditions are in Haiti, why they exist and how they exist. But isn't it the application of the law to the facts, not the factual conclusion per se? I would respectfully differ because whether the policy is a lawful sanction or not. What fact did the BIA specifically disagree with? The immigration judge has said the policy was an unlawful sanction. It determined that the conditions were deliberate. The fact that the IJ looked at that was different, supposedly, than what the BIA had looked at in the INE case, if that's the proper case, was the fact that the India Constitution had this particular provision in it. There's no evidence that that provision was newly added. It was always there. So I don't quite understand what the fact is that, supposedly, the BIA disagreed with the IJ on, insofar as that is concerned. There was an 88-page expert declaration and expert testimony. There were country condition reports from 2004 documenting the conditions that were in Haiti. The immigration judge considered all this evidence and determined that Mr. Rodori would be tortured. And why was there – I don't quite understand. There was really no factual difference. The only factual difference, apparently, is the fact that Mr. Rodori doesn't have a family member, supposedly, in Haiti. And that wasn't something that wasn't specifically referenced by the BIA in its decision, apparently. But other than that, I didn't see any factual disagreement. Well, that is a significant fact, because that's the difference between Matter J.E. and this case, but also the determination of why particular individuals were hired as prison guards. That's a fact. Whether these conditions in Haiti existed because it was a deliberate policy or the result of budgetary constraints, that is a fact. The expert expressly said that the Haitian government was turning down aid, international aid that would have improved the conditions. The BIA ignored that evidence and said, no, it must be the result of budgetary constraints, even though there was no evidence. The last point is where in the record? Turning down of aid. Pardon? The fact that the IJ found that the Haitian government was turning down aid was where in the IJ's decision? It is in the opening brief I summarized the cat claim on page 27 to 30, or the citations in my brief to all the citations in the record, where that exists. And I would respectfully submit that before 19 — before 2002, the BIA's decision would have been a proper one, because what it simply did was look at the evidence, came to a different result. Post-2002, however, that is an express violation of the BIA's regulations. In particular, the BIA never explained why the immigration judges' conclusions on these particular matters were wrong, let alone why they were wrong under the clearly erroneous standard. And akin to the Brazilian case, which I cited in yesterday's 28 — or 28J letter, there's a Ninth Circuit case that rules that these matters are fact and that that is a reversible error, and the matter needs to be remanded to the BIA to decide the case based on the IJ's actual findings. Okay. In the — I think in the JE case, they didn't discuss the constitutional provisions, is that right? Of JE? JE did not address the Constitution of Haiti. I believe it did, but what's particularly relevant about the JE case is that they looked at the country conditions that existed in 2000. No, no, I understand, but the question is the constitutional provision. The IJ said now that there is the constitutional provision, it is no longer a lawful sanction. Right. And actually, the IJ deferred to the expert testimony when making that finding, which was absent from the JE decision altogether. Turning to the cancellation claim, there it's even more starkly contrasted, where the IJ made — had a very different list of equities, a very different list of adverse quality — negative qualities than what the IJ came — when the BIA came up with. The BIA came up with its own equities, its own list of negative criteria. Basically, they're the same. I mean, the different efforts that's placed on different things, but basically it covered the same topics. Even though they — just because of the fact they reached different conclusions and evaluating the strengths and weaknesses of them isn't, again, a disagreement in terms of fact. It's the weighing of the — of that. Your Honor, I would submit what you described happened in the Nobel case, where simply that was a question of looking at rehabilitation, whether it did or did not exist. What's different from the Nobel case and this case is that there were expressly different equities. The BIA did not consider the fact that Mr. Rodori had an elderly father. He did not consider the trauma that he experienced when he found the murdered bodies of his mother and grandmother. Well, insofar as the father's concerned, there was no dispute that prior to this particular involvement with the immigration, there had been no contact for the prior nine years. So I don't know whether that is necessarily evidence that they failed to consider the impact insofar as the father's concerned. Under its regulations, it cannot take into account — and even if you disagree with the father, there's still the trauma that it did not account for. What the IJA did here is it looked at the adverse and negative and said, if we're looking at these lists alone, I would — I would deport him. If we looked at this list, plus we looked at the causes as to why he committed these crimes, I would still order him removed. However, when you take into account the trauma he experiences, the lack of seriousness of the crimes, and the fact that he's going back to almost certain torture, the scales suddenly tip towards keeping him here. That is not simply reweighing the facts. Under the Tran case and under the Cheng case, the Second and Sixth Circuits have said this is not a discretionary decision. This is looking at the facts. And the BIA in those instances committed the same error where it simply disregarded the IJA's analysis. And that is considered a factual finding under the BIA's own regulations. Turning to the case of RSH, which is BIA's own decision, it said, quote, a fact finding may not be overturned because the board would have weighed the evidence differently or decided the facts differently had it been the fact finder. It is this process described by the BIA itself, which is what the BIA did in this instance, and that is why it is a violation of its regulations, and that's why remand is in order. If there are no further questions, may I reserve the rest of my time? Mr. Bioder. Sure. Good morning, Your Honors, and may it please the Court. Kylie Kane on behalf of Attorney General Holder. As Your Honors know, the merits of this petition concern Mr. Bioder's eligibility for withholding a removal under the Convention Against Torture. The government's strongest argument here is the specific intent argument. The board simply found that the immigration judge's conclusions regarding the Haitian authority's intent to maintain prison conditions in these deplorable conditions with a specific intent to cause severe physical or mental pain and suffering is lacking on this record and, therefore, is indistinguishable from its en banc decision in matter of JE. Is the determination of specific intent a finding of fact or conclusion of law? It is a conclusion of law, because it goes to the regulatory elements that are required to make out a prima facie case for the Convention Against Torture Protection. So do you have a case that you can cite that bolsters your argument that a finding of specific intent is a conclusion of law as opposed to a conclusion of fact? This Court has not yet opined regarding the deference owed to the board's decision in matter of V.K., which is cited in the Respondent's answering brief here. That's a 2008 board decision that talks specifically about reversal of an immigration judge's grant of CAT protection. And in that case, the board is – it was held that the board is authorized to reverse an immigration judge's grant of CAT under a de novo standard of review implementing the regulations, the 2002 reforms to the regulations that are applicable to this case. Do you have a case that speaks to whether a finding of specific intent is a finding of law as opposed to a finding of fact? I do not believe that specific intent was involved in that case, although, Your Honor, I'm not quite sure. But I don't recall specific intent being the key element there. But what is similar about the board decision in that case and what we have here is the reversal of CAT. And I think that's what Mr. Redor is complaining of here, is whether there's a fact finding involved in the reversal of a grant of CAT. And matter of V.K. is instructive because it says that the reversal of that decision is under the de novo standard because, as Judge Wu had intimated, it is the application of the law to the facts established here. Well, what about generally, in general law, a determination of specific intent? Is that generally a finding of fact or a conclusion of law? I don't know. In a criminal case, if a jury, if a specific intent is an issue, does the jury make that finding or does the judge make that finding? Your Honor, I'm completely unfamiliar with that. I don't know. I appreciate the analogy, but, frankly, I just thought of my own knowledge. I'm not sure. Here, though, what we the reason that I'm saying the reason that I'm saying I'm having a little trouble then. You're saying that you made a blanket statement of specific intent as a question of law. In the CAT context. Well, okay, fine, in the CAT context. And you're saying that it's based on V.K.? I'm saying Which didn't address it, as far as you know? Well, matter of V.K., the reason I'm saying that that's instructive in this case is because you have the same situation here where there's the reversal of the grant of CAT from the emergency judge. Counsel, that's not the issue. The issue is, in response to Judge Rawlinson's question, is specific intent a factual or legal conclusion? And you don't know even what the criminal law provides for that. Well, no, I'm not completely speculating about this. The reason that I'm saying it's a legal conclusion is because it is in the regular it is a regulatory element that a Petitioner must make out in order to have prima facie eligibility for CAT. Yes, but why do you have I.J.'s? Don't they find facts? Don't they find out? And isn't that what the I.J. did here? He went through and he decided he had J.E. in front of him. He said, I understand J.E. I'm going through and I'm listing all of the ways in which things have changed. He cited the Constitution. He cited the fact that the conditions based on expert witness, conditions in the prison deteriorated, so it's now a death warrant. They've hired these guards who have human rights violations, which is he found to be evidence of the intent, not simply to protect the streets of Haiti, but in fact, to get rid of these criminals that were being deported back into Haiti. Those are findings of fact, are they not? Respectfully, all of the things that you've just enumerated, that is the evidence, is a finding of fact, and the Board relied on that exact same evidence to make that legal conclusion that specific intent was not there. So the disagreement is over the conclusion. But their standard is clear error review. They don't say a fact. Right. Okay. Where did they go through and explain where the I.J. committed clear error? The I.J. did not commit clear error. The Board did not find that the I.J. committed clear error. Don't they have to find that? Not unless they're going to overturn the facts. Well, isn't it, for example, the main factor that the I.J. used to make the determination of this specific intent was the fact that apparently the government was reinstating certain persons who had been accused, not convicted, but accused of human rights abuses, and that they accepted that as being true, but held that the mere fact that certain individuals were being reinstated who had been accused of human rights violations was not sufficient to establish specific intent, which is what the basis of the I.J.'s conclusion on that point. Isn't that correct? Right. So there's a disagreement over what conclusion to draw from the fact that human rights abusers have been placed back in power in this interim government. Well, let's get the term correct, accused human rights abusers. Correct. The I.J. didn't say convicted human rights abusers. Actually, on this point, the immigration judge actually says in the recitation of the facts of the evidence regarding the country report, with respect to the asylum and withholding of removal claim, which were before him, that the human rights the persons that were convicted or accused of human rights abuses had been cleared by other human rights organizations. In other words, the immigration judge's own decision recites both the fact that these people were placed in there for the purpose of killing off the inmate population and also the fact that these people were cleared by human rights organizations as being, in other words, more well-trained than those of the Aristide administration. So the immigration judge's decision actually has it both ways. But and that's – I think that's sort of indicative of these types of decisions, that you can draw different conclusions from the facts that are presented. And here, as Your Honor said intimated before, there's no disagreement in the Board's decision with the facts that the immigration judge found. It's a domestic family. There – the Board didn't reference, I think, the fact that this individual has no family. And one of the factors, a big factor, according to the expert, is if you have family members in Haiti, you can get the person out quicker because they'll put an affidavit of support for you, and therefore, the risk of harm is a lot greater for persons who do not have family members. Well, if I can push back against that a little bit. Now, the Board doesn't mention specifically that he lacks family. But what the Board says is that his case is not distinguishable materially from matter of JE. And in matter of JE, the Board – or, excuse me, yeah, the Board, the en banc Board said indefinite detention is what criminal deportees face, right? That's – that was the first section of the Board's decision in matter of JE. We're going to assume for purposes that this person is going to be detained indefinitely. Now, lack of family members goes to length of detention and conditions when they're in the prisons. So there's no – I'm having real trouble, though, with coming back to your just legal conclusions. You know, the fact is, is the IJ carefully goes through with the baseline of JE and says conditions that the Board – en banc Board had four years ago, whatever the timeframe was, have deteriorated. Things have changed on the ground. And the Board agrees with that, 100 percent. But they don't explain why. They just say they – you know, there's no discussion. They simply say, we're not persuaded. Well, no. And respectfully, I disagree with that. And they don't talk about family members. So, you know, if in – at the time of matter of JE, being indefinitely detained didn't carry the same high risk of death that it now factually has been established that it does, we're supposed to sit here and say, well, the Board has the authority to sign a brush aside this careful finding by the IJ. It doesn't – and they don't mention one of the key facts that the expert relied on and say, well, it's okay. That's their role. They can simply say, we take those facts as stated, and we just disagree with them. MS. GOTTLIEB Yes. The Board is allowed to draw different legal conclusions from the undisputed facts. MR. LOCKE And we should assume – and so you're saying that the record we have to assume is that every finding of fact, including family member, is a fact. And it's not disputed by the VIA. MS. GOTTLIEB Yes. The Board does not take any – does not disagree with the fact that Mr. Redor does not have family in Haiti. That's – there's no disagreement. That fact is still in play in the Board's decision. But the Board says, because specific intent hasn't been shown, this case is not materially distinguishable for matter of JE. And family has nothing to do with specific intent. It has everything to do with whether you're going to be released within a reasonable amount of time and what conditions the person will be placed in, because while everybody in the prison receives the same amount of food, those with family members get more because the family is able to bring them to the prisons. But that doesn't go to the heart of matter of JE, which the Board said controls here, that there's just not evidence of specific intent that the Haitian authorities maintain the conditions of these prisons in this deplorable state in order to torture. And nothing about lacking family goes to that question. And that's why the Board's decision, and I think really this case rises or falls with how the panel feels about the Board's determination, that specific intent hasn't been shown on this record. That's why I think that's the dispositive issue in this case, and not some of the other things, particularly lawful sanction, which I think is a much closer question. Ginsburg. So if we make a determination that a finding of specific intent is a question of fact rather than a question of law, you lose. I have to agree with that. Thank you. In other words, you're not saying it wasn't clearly erroneous? No. The Board did not say clearly erroneous, so no. I would love to say that, but the Board didn't find that, so no, I can't have that position. Yeah. He simplified it for me. Thank you. Thank you. Appreciate the argument. If I may make three quick points. In answer to your question, Judge Rawlinson, you asked whether there's night-circuit authority about the question of whether specific intent is a factual or a legal question. Looking at the Thien case, at Case 113, the Court resolved that question based on the record before it, which I would contend is a factual matter. The Villegas case at Penn State. I'm sorry, the Thien case, we have 1,000 Thien cases. Oh, oh, Thien, Thien. Oh. I don't know if I'm pronouncing it right, but it's the Thie gene, which is. Spell it for us. L-P-O-I-C-H-E-411-F-3rd. Yes. 1107-T-H-E-A-G-E-N-E. And then the Villegas case, which is at 523-F-3-984 at Penn State 998, there the standard here, Villegas cites nothing in the record that indicates specific intent, and we find nothing. Again, in order to prove specific intent, the petitioner had to look at the record that was before it. I would contend that, again, that establishes that specific intent is a matter of fact. If the Court disagrees, I would refer to the Brazilian case in which there were six questions of the air under the same clear air standard. And the Ninth Circuit said, we clearly agree that five of these issues are factual and remanded the BIA to decide those issues. On the sixth question, the Ninth Circuit said, we have a question about whether this is a legal question or a factual question, and we remand it to the BIA to make that determination in the first instance. Under either standard, we respectfully submit that the BIA erred by failing to apply the clearly erroneous standard, which under the Tran case is error alone. Are there any further questions? Ginsburg-McCarran, counsel, could you give Madam Clark a sheet with those case citations so we'll have them for the record? Absolutely. Thank you. I've got them, but that's okay. Please do, and I'll pass them along, too. Thank you, counsel, for the argument. I can just give her the cases I have. That's fine. You can just write them down and give them to her. Make sure we're all on the same page. Okay. Thank you, counsel, for the argument. It's submitted.
judges: Wu, Fisher, Rawlinson